## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

RXWOUND, LLC,

       Plaintiff,

vs.                                      Case No.  3:25-cv-260-MMH-SJH

EXTREMITY CARE, LLC,

       Defendant.

_____/

# **O R D E R**

**THIS CAUSE** is before the Court on Defendant Extremity Care, LLC's Motion to Dismiss, or, in the Alternative, to Transfer Venue or Stay, and Incorporated Memorandum of Law (Doc. 28; Motion), filed on May 5, 2025. Plaintiff RxWound, LLC, (RxWound) filed its Opposition to Defendant's Motion to Dismiss (Doc. 36; Response) on May 27, 2025. And, on June 17, 2025, Defendant Extremity Care, LLC, (Extremity Care) filed its Reply in Support of its Motion to Dismiss, or Alternatively Transfer, or Stay Plaintiff's Complaint (Doc. 45; Reply). Accordingly, this matter is ripe for review.

## I.     Background[1]

On March 28, 2024, RxWound, which sells and distributes wound care products, entered into a contract with Extremity Care, a wound care and medical products developer. See generally Sales Representative Agreement (Doc. 28-1 at 14–28; Sales Contract), filed on May 5, 2025. Under the Sales Contract, RxWound agreed to promote Extremity Care's products in exchange for service fees. See id. §§ 1.1, 4.7. And, to ensure RxWound's compliance with applicable health care laws, the Sales Contract authorized Extremity Care to inspect RxWound's facilities and operations. See id. at Exh. D § 10.

On September 5, 2024, Extremity Care notified RxWound that, during one of its audits, it learned RxWound was "engaging in conduct that 'reasonably would be expected to result in'" a penalty or sanction under a Healthcare Law. See Termination of Sales Representative Agreement (Doc. 28-1 at 30;

---

[1] In considering the Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to RxWound, and accept all reasonable inferences that can be drawn from such allegations. See Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa County, 21 F.3d 1531, 1534 (11th Cir. 1994). To the extent the Court describes and considers matters outside the pleadings, the Court draws all reasonable inferences and resolves all factual conflicts in favor of RxWound. See Elite Advantage, LLC v. Trivest Fund, IV, L.P., No. 15-22146-CIV, 2015 WL 4982997 at *3 n.1 (S.D. Fla. Aug. 21, 2015) ("On a motion to transfer venue, the Court is permitted to consider materials outside the pleadings."). As such, the facts recited may well differ from those that can ultimately be proved.

In citing to Elite Advantage, the Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.  See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

Termination Notice), filed on May 5, 2025. For this reason, Extremity Care notified RxWound of its termination of the Sales Contract for cause. See id. Based on the termination, Extremity Care refused to pay RxWound approximately $2,351,075.88 in service fees, which Extremity Care withheld during the audit. See Exhibit 1: Complaint (Doc. 28-1 at 2–12; Illinois Complaint), filed on May 5, 2025, ¶¶ 37–38. Extremity Care also refused to pay another $2,109,038.59 in service fees that became due after it sent the Termination Notice. See id. ¶¶ 39–40.

RxWound disputed Extremity Care's grounds for termination and asserted that the service fees were wrongfully withheld. See Confidential Settlement Agreement and Release (Doc. 8; Settlement Agreement), filed on March 17, 2025, at Recital C.[2] Ultimately, on February 10, 2025, the parties entered into the Settlement Agreement to resolve the dispute. See Settlement Agreement at Recitals A–D; Complaint (Doc. 1; Florida Complaint), filed on March 7, 2025, ¶ 14. There, Extremity Care agreed to pay RxWound a confidential sum of money in exchange for RxWound's release of all claims arising from or relating to the Sales Contract. See Settlement Agreement § 1.3; Florida Complaint ¶¶ 16, 28. Extremity Care was to make this payment by February 28, 2025. See Settlement Agreement § 1.2; Florida Complaint ¶ 17.

---

[2] The Recitals set forth in the Settlement Agreement were incorporated into and made a material part of the Settlement Agreement. See Settlement Agreement § 1.1.

But it never did. See Florida Complaint ¶¶ 18, 19. Instead, Extremity Care attempted to renegotiate the terms of the Settlement Agreement. See id. ¶ 20.

Rather than entertain Extremity Care's renegotiation attempts, RxWound initiated two separate lawsuits against Extremity Care. On March 7, 2025, RxWound initiated this action (the Florida Action), asserting claims arising out of Extremity Care's breach of the Settlement Agreement. See generally Florida Complaint. A few weeks later, on March 26, 2025, RxWound initiated another action against Extremity Care in the United States District Court for the Northern District of Illinois (the Illinois Court). See RxWound, LLC v. Extremity Care, LLC, No. 1:25-cv-03254 (N.D. Ill.) (the Illinois Action). There, RxWound asserts claims arising from Extremity Care's breach of the Sales Contract. See generally Illinois Complaint.

At present, in the Illinois Action, the parties have filed answers and counterclaims. See Illinois Action, Extremity Care, LLC's Answer, Affirmative Defenses, and Counterclaim (Doc. 19), filed on May 5, 2025; Illinois Action, Plaintiff RxWound, LLC's Answer to Defendant Extremity Care, LLC's Counterclaims (Doc. 36), filed on August 21, 2025. And the Illinois Court is tracking the status of this Motion. See Illinois Action, Notification of Docket Entry (Doc. 41), entered on November 25, 2025, (ordering the parties to file a status report on the Florida litigation and setting the Illinois Action for a tracking status hearing).

In the Motion before this Court, Extremity Care argues, amongst other things, that the Florida action should be transferred to Illinois pursuant to the forum selection clause in the Sales Contract or under the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>. <u>See</u> Motion at 9–16. In response, RxWound contends that the forum selection clause does not govern the dispute arising under the Settlement Agreement and that Extremity Care has failed to meet its burden of showing that convenience favors Illinois as the forum for this litigation. <u>See</u> Response at 12–14. Upon review, the Court finds that this action is due to be transferred pursuant to 28 U.S.C. § 1404(a).

## II.    Applicable Law

When parties have instituted competing or parallel litigation in separate courts, courts apply the "first-filed rule" which provides that "the court initially seized of the controversy should hear the case." <u>Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.</u>, 713 F.3d 71, 78 (11th Cir. 2013) (citing <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu</u>, 675 F.2d 1169, 1174 (11th Cir. 1982)). Indeed, "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." <u>Id.</u> (quoting <u>Manuel v. Convergys Corp.</u>, 430 F.3d 1132, 1135 (11th Cir. 2005)). "The primary purpose of the rule is to conserve judicial resources and avoid

conflicting rulings." Allstate Ins. Co. v. Clohessy, 9 F. Supp. 2d 1314, 1316 (M.D. Fla. 1998). Significantly, the party objecting to jurisdiction in the first-filed forum bears the "burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." Manuel, 430 F.3d at 1135; see also Merrill Lynch, 675 F.2d at 1174 ("In [the] absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case."). In determining whether an exception to adherence to the first-filed rule is warranted, courts may consider the same factors applicable to motions to transfer under 28 U.S.C. § 1404(a). See Collegiate Licensing Co., 713 F.3d at 79; Evergreen Media Holdings, LLC v. Paul Rock Produced, LLC, No. 2:14-cv-499-FtM-29DNF, 2015 WL 1523961, at *3 (M.D. Fla. Apr. 2, 2015); see also Allstate Ins. Co., 9 F. Supp. 2d at 1316 ("[I]t is well accepted that the forum where an action is first filed is given priority over subsequent actions, unless there is a showing of balance of convenience in favor of the second forum or there are special circumstances which justify giving the priority to the second action.").

In considering whether to transfer a case pursuant to § 1404(a), a district court must engage in a two-step inquiry. See Eye Care Int'l, Inc. v. Underhill, 119 F. Supp. 2d 1313, 1318 (M.D. Fla. 2000); Mason v. Smithkline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001). The court must first determine, as a threshold matter, whether the case might have been filed in the

proposed district, or whether all parties have consented to suit in that district. See Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., No. 8:06-CV-1746-T-27MAP, 2006 WL 3333718, at *1 (M.D. Fla. Nov. 16, 2006); see also Colo. Boxed Beef Co. v. Coggins, No. 8:07-cv-00223-T-24MAP, 2007 WL 917302, at *3 (M.D. Fla. Mar. 23, 2007); 28 U.S.C. § 1404(a). Next, the court must consider "whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice." Eye Care Int'l, Inc., 119 F. Supp. 2d at 1318; see also Bookworld Trade, Inc., 2006 WL 3333718, at *1. In doing so, the court evaluates a number of factors.[3]  See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Colo. Boxed Beef Co., 2007 WL 917302, at *3 (detailing the factors to be considered in determining whether a transfer is appropriate under § 1404(a)) (quoting Manuel, 430 F.3d at 1135 n.1). Under § 1404(a), a trial court has broad discretion in determining whether a transfer is appropriate.  See Stewart Org., Inc., 487 U.S. at 29; Am. Aircraft Sales Int'l, Inc. v. Airwarsaw Inc., 55 F. Supp. 2d 1347, 1351 (M.D. Fla. 1999).

---

[3] These factors include the following:

"(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances."

Colo. Boxed Beef Co., 2007 WL 917302, at *3 (quoting Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

It is the party seeking transfer who bears the burden of establishing that a case should be transferred to the suggested forum in the interests of convenience and justice. See In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) ("[T]he burden is on the movant to establish that the suggested forum is more convenient."); Colo. Boxed Beef Co., 2007 WL 917302, at *3. Moreover, "[i]n determining the propriety of transfer, the Court must give considerable weight to Plaintiff's choice of forum. Only if the Plaintiff's choice is clearly outweighed by considerations of convenience, cost, judicial economy, and expeditious discovery and trial process should this Court disregard the choice of forum and transfer the action." Response Reward Sys., L.C. v. Meijer, Inc., 189 F. Supp. 2d 1332, 1339 (M.D. Fla. 2002) (internal citations omitted); see also In re Ricoh Corp., 870 F.2d at 573 ("[F]ederal courts traditionally have accorded a plaintiff's choice of forum considerable deference."); Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.").

In addition to the above, the Court must consider whether the parties entered into a valid and enforceable forum selection clause. Indeed, the existence of a forum selection clause has a significant impact on the calculus of the § 1404(a) analysis. When presented with a forum selection clause, the Court first determines whether the clause is mandatory or permissive. Trafalgar

Capital Specialized Inv. Fund (In Liquidation) v. Hartman, 878 F. Supp. 2d 1274, 1282 (S.D. Fla. 2012) (citing Slater v. Energy Servs. Grp. Int'l Inc., 634 F.3d 1326, 1330 (11th Cir. 2011)). "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, in contrast, 'dictates an exclusive forum for litigation under the contract.'" See Global Satellite Commc'n Co. v. Starmill U.K. Ltd., 378 F.3d 1269, 1272 (11th Cir. 2004) (quoting Snapper, Inc. v. Redan, 171 F.3d 1249, 1262 n. 24 (11th Cir. 1999)). While mandatory clauses use specific terms of exclusion, such as the word "shall," "permissive clauses 'contain[ ] no mandatory language to indicate that the parties meant to foreclose litigation anywhere else.'" LFR Collections LLC v. Taylor, No. 8:11-cv-1117-T24EAJ, 2011 WL 4736360, at *2 (M.D. Fla. Oct. 7, 2011) (alteration in original) (quoting Stateline Power Corp. v. Kremer, 148 F. App'x 770, 771 (11th Cir. 2005)).

The construction of a forum selection clause is a matter of federal common law. See Cornett v. Carrithers, 465 F. App'x 841, 842 (11th Cir. 2012) ("[T]he construction of forum selection clauses by federal courts is a matter of federal common law, not state law of the state in which the federal court sits."); Emerald Grande, Inc. v. Junkin, 334 F. App'x 973, 975 (11th Cir. 2009); but see Rucker v. Oasis Legal Fin., L.L.C., 632 F.3d 1231 (11th Cir. 2011) (applying the Erie doctrine to determine whether federal or state law governed the

enforceability of a forum selection clause);[4] <u>Martinez v. Bloomberg LP</u>, 740 F.3d 211, 220 (2d Cir. 2014) ("To ensure that the meaning given to a forum selection clause corresponds with the parties' legitimate expectations, courts must apply the law contractually chosen by the parties to interpret the clause."). Federal common law, in turn, provides that "forum selection clauses are to be interpreted by reference to 'ordinary contract principles.'" <u>Cornett</u>, 465 F. App'x at 842. Additionally, forum selection clauses are to be construed broadly. <u>See Gen. Pump & Well, Inc. v. Laibe Supply Corp.</u>, No. CV607-30, 2007 WL 4592103, at *3 (S.D. Ga. Dec. 28, 2007) (citing <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 810 F.2d 1066, 1070 (11th Cir. 1987) (en banc), <u>aff'd and remanded on other grounds</u>, 487 U.S. 22 (1988)); <u>see also Digital Envoy, Inc. v. Google, Inc.</u>, 319 F. Supp. 2d 1377, 1380-81 (N.D. Ga. 2004).

## III. Discussion

### A. Alternative Venue and First-Filed Rule

As an initial matter, the Court finds that this action could have been brought in the Illinois Court. The Illinois Court has subject matter jurisdiction over this action. Indeed, the parties are completely diverse: RxWound is a

---

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

citizen of Indiana, <u>see</u> Plaintiff RxWound LLC's Disclosure Statement Under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 (Doc. 26), filed on April 28, 2025, at 2, and Extremity Care is a citizen of Pennsylvania and Illinois, <u>see</u> Defendant's Second Amended Disclosure Statement Under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03, (Doc. 27; Defendant's Disclosure Statement), filed on May 2, 2025, at 2. And the amount in controversy exceeds $75,000. <u>See</u> Florida Complaint ¶ 9. Further, the Illinois Court has personal jurisdiction over Extremity Care as Extremity Care is a citizen of Illinois. <u>See</u> Defendant's Disclosure Statement at 2. Moreover, Extremity Care has conducted business in Illinois. <u>See</u> Sales Contract § 13.11 (stating that the contract was "made in Illinois to be performed and consummated in Illinois"). Finally, venue would be proper in the Illinois Court as the dispute giving rise to the need for the Settlement Agreement occurred in Illinois. <u>See</u> <u>id.</u> As such, this action could have been brought in the Illinois Court.

The Court turns next to the import of the first-filed rule. It is undisputed that the Florida Action is the first-filed suit. <u>See</u> Motion at 8–9 n.2; Response at 4. On this basis, RxWound requests that the Court decline to transfer this action and direct Extremity Care to seek relief in the Illinois Action. <u>See</u> Response at 6. But Extremity Care contends that doing so would reward RxWound's forum shopping and allow it to avoid the mandatory forum selection

clause in the Sales Contract. <u>See</u> Motion at 8–9 n. 2. Extremity Care argues that RxWound "orchestrat[ed] the 'first filed' case in contravention of a forum selection clause" and engaged in "blatant forum shopping and a brazen attempt to avoid Illinois courts." <u>See</u> Reply at 1, 3; <u>see also</u> Motion at 8–9 n.2. RxWound counters that it "was compelled to rely on the [Florida Action's] ties to Florida to bring the case in this district." <u>See</u> Response at 12.

One exception to the first-filed rule applies "when the first-filed action was filed in apparent anticipation of the other pending proceeding." <u>See</u> <u>NaturesMAX, Inc. v. Quintessential Biosciences, LLC</u>, No. 2:15-cv-551-FtM-38CM, 2015 WL 12826478, at *2 (M.D. Fla. Nov. 9, 2015). However, "even if this showing is made, whether the first to file rule, or one of the exceptions, applies remains a matter of discretion for the first-filed court." <u>Id.</u>; <u>see also</u> <u>Allstate</u> <u>Ins. Co.</u>, 9 F. Supp. 2d at 1316. RxWound's contention that it had no basis to bring the Florida Action in Illinois is unavailing. While the two contracts at issue are separate and distinct agreements, they are both ultimately based on the same commercial relationship, involve overlapping issues, and share some overlapping facts. And, notably, both require the application of Illinois law. <u>See</u> Settlement Agreement § 2.6; Sales Contract § 13.11. Accordingly, both actions could have been brought together in the Illinois Court. Yet, RxWound opted to file two separate lawsuits in courts several states apart. On this record, a desire for some tactical advantage appears to have motivated the filing and timing of

RxWound's two lawsuits, and this weighs against application of the first-filed rule in this case.

It may further be appropriate to "depart from the general rule if there is a showing that the balance of convenience tips in favor of the second forum or that there is a showing that there are special circumstances which justify giving priority to the second action." See Lockheed Martin Corp. v. L-3 Commc'ns Corp., 405 F. Supp. 2d 1381, 1383 (N.D. Ga. 2005). For this reason, the Court next considers the effect of the forum selection clause.

### B. The Forum Selection Clause

Extremity Care argues that the Court should transfer this action to Illinois pursuant to the forum selection clause in the Sales Contract. See Motion at 9–13. The forum selection clause provides: "The sole and exclusive venue for any action brought under this Agreement shall be in a federal or state court in Cook County, Illinois, and the parties agree that such courts shall have jurisdiction." See Sales Agreement § 13.11. Extremity Care contends that this clause should extend to the claims brought in the Florida Action because "[b]y its express terms, the purported settlement agreement involves a dispute under the Sales Agreement." See Motion at 12. Upon consideration of the parties' arguments and the terms of the forum selection clause, the Court finds Extremity Care's reliance on the clause to be unavailing.

Although the parties entered into the Settlement Agreement to resolve a dispute under the Sales Contract, the Settlement Agreement itself is a separate and distinct contract. RxWound's claims in the Florida Action arise under the Settlement Agreement, not the Sales Contract. See generally Florida Complaint. The Settlement Agreement does not contain any forum selection clause. See generally Settlement Agreement. As such, the Florida Action is not due to be transferred pursuant to the forum selection clause in the Sales Contract.[5]

---

[5] Extremity Care cites several cases to support its position that the Settlement Agreement is subject to the forum selection clause in the Sales Contract. See Motion at 9–13; Reply at 4. However, these cases are readily distinguishable. First, many of Extremity Care's cited cases evaluate forum selection clauses or arbitration provisions that are broader than the clause at issue here. Indeed, Extremity Care's cited cases evaluate clauses using extremely broad phrases such as "relating to" and "in connection with." See, e.g., Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co., 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (evaluating an arbitration clause that covered disputes "related to the interpretation or performance" of the agreement); Grape Stars Int'l, Inc. v. nVentive, Inc., No. 20-20634-CIV, 2020 WL 4586123, at *7 (S.D. Fla. Aug. 10, 2020) ("in connection with"); Prime Vision Health Inc. v. Indiana Eye Clinic PC, No. 1P00-0096-C-B/S, 2000 WL 977397, at *4 (S.D. Ind. July 13, 2000) ("arising out of or relating to"); Littman v. 3236 NE 5 St., Inc., No. 07-61765-CIV, 2008 WL 11419049, at *5–6 (S.D. Fla. June 19, 2008) ("relating thereto"). If the parties had used some variation of these phrases, a suit based on the Settlement Agreement may have fallen within the scope of the Sales Contract's forum selection clause. But the parties chose not to use such expansive language in the Sales Contract, and the Court is not convinced that a dispute arising under a subsequent contract, although related to the initial contract, falls under the initial contract. Moreover, Extremity Care's other cases evaluate whether related tort claims are subject to forum selection clauses; they do not deal with a subsequent settlement agreement between the parties. See, e.g, Stiles v. Bankers Healthcare Grp., Inc., 637 F. App'x 556, 559–61 (11th Cir. 2016) (interpreting a forum selection clause to encompass claims under the Truth-in-Lending Act); HBA Hollywood Beauty Acad., LLC v. Lam, No. 6:23-CV-2363-CEM-RMN, 2024 WL 3618276, at *5 (M.D. Fla. May 2, 2024) (holding that a forum selection clause encompassed non-contract claims). For these reasons, the Court finds Extremity Care's cited authority unpersuasive.

While the Court is not convinced that the forum selection clause controls a dispute arising under the Settlement Agreement, the Court notes that the presence of the forum selection clause, which controls the second-filed Illinois Action, is a circumstance which may justify giving priority to the Illinois Action. Indeed, the forum selection clause in the Sales Contract is a mandatory forum selection clause as it "dictates an exclusive forum for litigation under the contract." See Glob. Satellite Commc'n Co., 378 F.3d at 1272 (internal quotation omitted). The language used makes clear that, should any dispute arise between the parties under the Sales Contract, the parties agreed that exclusive jurisdiction resides in Cook County, Illinois and not anywhere else. See Sales Contract § 13.11. Thus, RxWound cannot maintain the Illinois Action in Florida. Accordingly, if the cases are to be consolidated, or brought in the same court, the Illinois Action would have to have priority, despite it being the second-filed suit.

### C. Fairness and Convenience Factors

#### 1. Convenience of the Witnesses and the Parties

Extremity Care argues that the convenience of the parties and witnesses weighs in favor of transfer. See Motion at 15. Notably, neither party provides much information for the Court to evaluate this factor. Indeed, Extremity Care does not explain where any of the relevant witnesses are located. See generally

Motion. And RxWound simply argues that the Florida forum is convenient for Extremity Care as it is a Florida limited liability company that does business in Florida. See Response at 14. Of course, Extremity Care's argument that litigation in Florida would be inconvenient to the parties and witnesses does not rest on where they are located. Rather, the crux of Extremity Care's argument is that, by maintaining both the Florida Action and the Illinois Action, the parties and the witnesses will be inconvenienced by being forced to travel between two fora that are several states apart. See Motion at 15. The Court agrees and finds that these factors favor transfer to Illinois.

RxWound's argument that the two actions share no overlapping material facts goes too far. Whether the Settlement Agreement is a valid contract, whether Extremity Care performed under the Settlement Agreement, and whether RxWound waived its claims arising under the Sales Contract,[6] are all germane to both actions. Moreover, the calculation of damages in each action may hinge on RxWound's success in the other action. In addition, it appears that the two cases will likely require some of the same witnesses. The same person signed the Sales Contract and the Settlement Agreement on behalf of RxWound. Compare Settlement Agreement at 4, with Sales Contract at 8.

---

[6] Notably, Extremity Care has asserted waiver as a defense in the Illinois Action. See Exhibit 2: Extremity Care, LLC's Answer, Affirmative Defenses, and Counterclaim (Doc. 28-2), filed on May 5, 2025, at 21.

And it appears that the same person signed the Termination Notice and the Settlement Agreement on behalf of Extremity Care. <u>Compare</u> Settlement Agreement at 4, <u>with</u> Termination Notice. Ultimately, having the parties and the witnesses travel to Illinois is more convenient than having them travel to both Illinois and Florida. It would therefore be more convenient for the parties and the witnesses to resolve all claims in Illinois, especially since the parties could attempt to consolidate the cases before the Illinois Court.

### 2. Location of Relevant Documents, Relative Means of the Parties, and Availability of Process

Extremity Care does not address these factors. <u>See generally</u> Motion. As far as the Court can discern, these factors are neutral and thus weigh against transfer to Illinois.

### 3. Locus of Operative Fact

"For venue purposes, a cause of action for breach of contract 'accrues in the county where the contract is breached.'" <u>See</u> <u>Frybarger v. Salemme</u>, No. 22-61437-CIV, 2022 WL 18530012, at *12 (S.D. Fla. Dec. 28, 2022) (quoting <u>Guarantee Ins. Co. v. Amazing Home Care Servs., LLC</u>, No. 12-24026-CIV, 2013 WL 12094328 (S.D. Fla. Feb. 13, 2013)). "If the alleged breach is failure to pay money due under a contract, 'the cause of action accrues where performance of the act of payment was to occur.'" <u>See</u> <u>id.</u>

Here, RxWound contends that Extremity Care breached the Settlement Agreement by failing to pay the amount due under the agreement. See Florida Complaint ¶¶ 29–31. According to the Settlement Agreement, Extremity Care was to make this payment to a bank account located in Winter Haven, Florida. See Settlement Agreement § 1.2. As such, the Florida Action's locus of operative fact is in Florida. However, the Court notes that, despite RxWound's artful pleading, the Florida Action is not devoid of any connection to Illinois. Indeed, the events giving rise to the Settlement Agreement appear to have occurred in Illinois. See Sales Contract § 13.11 (stating that the Sales Contract was "to be performed and consummated in Illinois."). While it is unclear where the operative facts for RxWound's fraudulent misrepresentation claim occurred, ultimately, because the payment under the Settlement Agreement was to be made in Florida, this factor weighs against transfer of this action.

### 4. Governing Law

The Settlement Agreement states, "This Agreement shall be governed, construed and enforced under the laws of the State of Illinois." See Settlement Agreement § 2.6. While this Court is fully capable of applying Illinois law, the Illinois Court is likely to be more familiar with the relevant laws. As such, this factor weighs in favor of transfer to Illinois.

### 5. Weight Accorded to RxWound's Choice of Forum

As discussed above, a plaintiff's choice of forum is given considerable deference such that it should be disregarded only where that choice is "clearly outweighed by considerations of convenience, cost, judicial economy, and expeditious discovery and trial process." <u>Response Reward Sys., L.C.</u>, 189 F. Supp. 2d at 1339 (internal citations omitted); <u>see also</u> <u>Ricoh Corp.</u>, 870 F.2d at 573 ("[F]ederal courts traditionally have accorded a plaintiff's choice of forum considerable deference."); <u>Robinson</u>, 74 F.3d at 260 ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations."). However, "a plaintiff's choice of forum warrants less deference if there is any indication that plaintiff's choice of forum is the result of forum shopping." <u>Combs v. Fla. Dep't of Corr.</u>, 461 F. Supp. 3d 1203, 1214 (N.D. Fla. 2020) (internal quotation omitted). Here, as it is Extremity Care that seeks a transfer, Extremity Care bears the burden of establishing that the relevant factors warrant the Court's disregard of RxWound's choice of forum. Extremity Care argues that no weight should be given to RxWound's choice of the Florida forum because "it has impermissibly and inexplicably chosen two different fora." <u>See</u> Motion at 15.

The claims in both the Florida Action and the Illinois Action stem from the same business relationship between the same parties and present overlapping issues of law and fact. Logically, such claims would be brought

- 19 -

together to avoid duplication of work and reduce attorneys' fees and costs. Yet, RxWound opted to bring them separately and in two different courts. Based on the circumstances surrounding the two actions, it appears that tactical advantage motivated the timing and filing of the Florida Action. Additionally, in initiating both actions, RxWound chose both the Illinois Court and the Florida Court to litigate its claims against Extremity Care with full knowledge that one of the two suits must be litigated in the Illinois Court. On this record, the Court will give only limited deference to RxWound's choice of the Florida forum for its suit based on the Settlement Agreement.

### 6. Trial Efficiency and the Interests of Justice

Extremity Care maintains that, by allowing RxWound's actions to proceed in two different fora, "two federal courts will be unduly burdened in litigating two overlapping cases in different fora." See Motion at 15. Considering the totality of the circumstances, trial efficiency and the interests of justice are best served through transfer to the Illinois Court. As discussed previously, the Illinois Action and the Florida Action both involve the same parties and deal with overlapping legal and factual issues. By initiating these two actions in different courts, RxWound needlessly preoccupies two courts with similar, if not the same, legal and factual issues. Further, by initiating both actions separately, RxWound risks inconsistent judicial determinations as to issues like the validity of the Settlement Agreement and the overall award of damages. As

such, this factor weighs heavily in favor of transfer to the Illinois Court. See Cont'l Grain Co. v. The FBL-585, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."); Meterlogic, Inc. v. Copier Sols., Inc., 185 F. Supp. 2d 1292, 1301–1302 (S.D. Fla. 2002) (finding that transfer was appropriate because two courts would have to consider the same underlying issues and consolidation in one forum would avoid duplicative litigation).

## IV. Conclusion

Upon consideration of the foregoing, the Court concludes that, pursuant to 28 U.S.C. § 1404(a), this action should be transferred to the United States District Court for the Northern District of Illinois. Indeed, special circumstances warrant departure from the first-filed rule in this case, and considerations of convenience and judicial economy outweigh RxWound's choice of the Florida forum. Accordingly, it is

**ORDERED:**

1. Defendant Extremity Care, LLC's Motion to Dismiss, or, in the Alternative, to Transfer Venue or Stay, and Incorporated Memorandum of Law (Doc. 28) is **GRANTED in part**.

2. The Motion is **GRANTED** to the extent that the Clerk of the Court is **DIRECTED** to transfer this action to the United States District Court for the Northern District of Illinois and close this file.

3. The Motion is **DENIED** in all other respects.

**DONE AND ORDERED** in Jacksonville, Florida, this 8th day of December 2025.

**MARCIA MORALES HOWARD**
United States District Judge

Lc35

Copies to:

Counsel of Record